May it please the court. Kenneth Carpenter appearing on behalf of Mr. Alvin Hightower. The error in this matter by the Veterans Court was in permitting the board to rely upon medical opinions obtained by two VA examiners in 2007 and 2010, which predated the VA's enactment of its amendment to 38C. CFR 3.304F by creating subsection F3, which provides a new and lower evidentiary standard for persons seeking service-connected compensation for post-traumatic stress disorder. Mr. Carpenter, I want to talk with you a little bit about policy, if I may, and I'll put it in the context of this case. VA policy? You'll get the whole question. You have two examiners here who said there's no PTSD. One of them even said there was malingering. The board and the Court of Veterans' Appeals agree. I'm putting that case kind of in the context then of a hearing I attended and was part of at the House Veterans Affairs Committee, where there was great discussion of the 1.2 million pending claims. The failure of this quarter, the Court of Veterans' claims to resolve even 1,000 cases a year because we've got this hamster wheel of sending cases always back and there's perpetual re-examination and looking again to see if maybe there's a different way or maybe we can find another doctor. And this goes on and on and no case is ever brought to conclusion. Isn't this case one where we can reach a conclusion without the hamster wheel? I don't believe so, Your Honor. Two examiners say no PTSD, both are malingering. But those are VA examiners, Your Honor, and they were using a standard that did not exist at the time in which the board considered the matter. There's no evidence of a primary stressor, which again isn't where you want to put your emphasis. You want to look at the earlier element. But with respect, Your Honor, there is evidence of a stressor based upon the veterans' lay evidence about what happened to him in service at a point in time in which he was placed in fear of a hostile military enemy activity. But that's not the ground for the veterans' court decision. No, that's not. Right. So you say the doctors were applying the wrong standard. That's the part that troubles me because – wait a second. As I understand it, the doctors used the DSM, right, in diagnosing. Do they look at the regulations? Do they report to be determining what kinds of stressors qualify under the regulations? Or are they just rendering a medical opinion as to whether there's PTSD here under the DSM? In this case, I believe they did a little bit of each. What they should be doing is staying exclusively the DSM. But in fact, in this case, their decision was based upon the lack of a verified stressor. And clearly, under the law as it existed prior to the amendment to 3.304F, creating F3, Mr. Hightower could not have prevailed. He did not have – How do we know that the doctors, instead of applying the DSM, are making a legal judgment as to what qualifies under the regulation? One of them does talk about the lack of combat. The other one doesn't. But neither one of them makes reference to the regulation, right? No, neither of them do make reference except, I believe, obliquely in terms of there was not verification or corroboration of the stressor, as reported by Mr. Hightower, that was sufficient to support the diagnosis. And that is the test under the regulation, that there has to be a stressor that is sufficient to support the diagnosis based upon a stressor that has had credible supporting evidence to corroborate its occurrence during service. 3.304F3 changed that dynamic. Where do we find the doctor talking about the lack of corroboration? Okay. At page JA41, and I believe this is the 2007 examination, at the end of the paragraph that carries over from the preceding page, I believe it's the last sentence, there is no evidence to support a diagnosis of post-traumatic stress disorder in this case, as there is no evidence to support a traumatic stressor. And his reports of things of combat are in direct conflict with his report, and that was not involved in any direct combat. Okay, but that's not the same thing as saying it was a lack of corroboration. That language doesn't sound as though the doctor is applying the old regulation. Didn't the board find as a matter of fact that there's no stressor here? Yes, they did, Your Honor. Fact is fact. We don't get to review that. And under the prior regulation, that is correct. But the amended regulation affords the veteran the opportunity based upon his lay testimony at all. You know, Your Honor, you talk about the policy in this case. This case does demonstrate the conflict between the treatment... How many of the thousands of veterans who have really substantive cases are you inhibiting by taking the time of the veterans court and this court dealing with someone whose best evidence of a stressor is that he heard somebody talking about an injury that happened? Your Honor, this veteran has been diagnosed by treating VA psychiatrists. Not one, but multiple ones. There are at least five different VA psychiatrists who have given him a diagnosis of post-traumatic stress disorder, which the VA examiner says he doesn't have, and they have related it to the incidents which occurred during service. It is simply unfair for you to characterize Mr. Hightower's circumstances as being essentially... I'll decide whether I'm fair or not. You stick with the facts, not characterizing the court's commentary. Now, please proceed, Mr. Commentary. The evidence in this case involves VA treating physicians that have a completely different view of Mr. Hightower's disability than the two VA examiners who examined him. But what's key here is that both VA examiners ultimately agreed that he did have depression, and that depression was related to what happened to him in service. And the difference here is whether or not he is evaluated for his disability for what he's being treated for, or he's evaluated for the disability that the VA examiners decide that he has. And that is a significant difference in the outcome of the evaluation of his case. And what is important about the amendment of 3.304F3 is that it created a lower standard that by the VA's own promulgation, delegated that responsibility to VA psychiatrists and psychologists to confirm whether or not the stressors as reported by the veteran can support that diagnosis. Therefore, what the VA examiners would be looking at is completely different than what they looked at in 2007 and what they looked at in 2010. Because what they're looking at under the new standard is whether or not the diagnosis that had been made by treating VA psychiatrists and psychologists is in fact supported by the lay evidence of those incidents which took place in service to support the diagnosis made by his treating psychiatrist. The critical matter that is at issue in this case is the right of a veteran to have the opportunity to utilize a lower evidentiary standard when his case is presented to the board when there has been a change in law. When the VA wrote this regulation, it said that it was applicable to any veteran whose case was pending at the time in which the regulation was promulgated. That was July of 2010, and that regulation was in place at the time in which the board considered this matter. They did not afford him the benefit of this regulation because this regulation expressly requires a VA psychiatrist or psychologist to address specific issues. Unless there's further questions, I'll reserve the balance of my time. Thank you, Mr. Breskin. May it please the Court. I'd like to start with the two most salient points, one of which Your Honor brought up in his first question, which is that the VA medical personnel in 2007 and 2010 did not diagnose Mr. Hightower with PTSD. Those reports were given higher probative value by the board which credited those reports and found that he does not in fact have PTSD. Could I back you up for just a second before we get to that? The board said that the alleged stressor here wouldn't qualify under the new regulation. Is that error, if the veteran's description of what happened to him was correct, does that qualify under the regulation as fear of hostile military or terrorist activity? Well, I believe this Court doesn't have the jurisdiction to reach that question because it's an application, but as we argue in our brief… No, it's not. It's a question of how you interpret the regulation. As we argue in our brief, it is a correct decision because of the nature of the stressors identified in the board decision. The only one that really relates to something even tangentially related to the fear of hostile military or terrorist activity as defined in the regulation… He's treating people who describe combat experience and he says that that led to his PTSD. The question I'm asking you is, does this regulation apply in a circumstance where the veteran himself is not in combat, but he's a medic at the front and he hears about combat experiences of other people? I think it could, but I think in this circumstance, the way that you characterized his stressor isn't quite accurate. His stressor was three things. One was he was treating individuals, and this is how the board found, with accidental or self-inflicted injuries, and the stress he related was that they expressed guilt to him or things they wanted him to mention to people at home. He also related stress that he had resulting from in-unit strife that came about because of interactions he had with people in his unit. And so as the board found, he did not have – I don't dispute that a medic certainly could experience… Okay. So if a medic could experience that, the description of the scope of this regulation by the board was wrong, right? The board did not… The board said it had to be combat. I don't believe the board said that it had to be combat, no, because F3… I think if you look at it, there are a number of places there where they say that if he weren't in combat, it doesn't count. I think perhaps they inartfully used combat as a way of describing the stressors that are included as examples in the regulation, which relate to things such as IED attacks or sniper attacks. It is true that it is not meant to only include people who are in combat, but the board here took a look exactly at what his stressors were and whether or not they rose to the level to trigger F3. F3 was in place at the time the board made this decision. What do the doctors who are doing these diagnoses have in front of them? They have the DSM in front of them. Do they have the regulation? I don't know the answer to that question. I know that the VA sent them a questionnaire of things to determine. I don't… I'm not sure I would understand why they would have the regulation in front of them. Their job is to determine whether or not under the DSM-IV, this individual has a mental disability, whether it be depression or PTSD. Especially if you look at under F3, the two questions specifically asked to the medical personnel is about whether or not the stressors are sufficient to support a diagnosis of PTSD and the symptoms. Those aren't issues addressed by the factual findings to be made by the adjudicators. Those are the application of DSM criteria to the medical evidence. What you're saying is the doctor's job is to apply the DSM criteria. It's the job of the rating specialist or the adjudicator to determine whether the stressor comes under the statute, under the regulation. Correct. That's demonstrated by the fact that the stressor has to be consistent with the time and circumstances in place of the veteran's service. Now, this new F3 regulation is going to require that the claimed stressor is adequate to support the PTSD, right? Correct. That's what the board specifically found there is no adequacy, right? Correct. As a matter of fact. Correct. On that basis alone, without going into the arguments raised by Mr. Carpenter, this case is over, right? Correct. That is the basis of the Veterans Court decision. Veterans Court simply said whether or not it is the responsibility of the medical personnel to make the initial determination of whether the stressor relates to a fear of hostile military or terrorist activity, which is the argument presented. The stressors here are not sufficient to support the PTSD diagnosis, and he was not diagnosed with PTSD. And so F3 cannot apply, even if the court were to agree with Mr. Hightower's position that it is a VA psychiatrist who should determine whether a stressor relates to a fear of hostile military or terrorist activity. That would not change the fact that the VA medical personnel already determined that the stressors identified are not sufficient. Well, I have a little trouble with that, because if in fact the VA physicians were applying the regulation and saying we have the job of determining whether this stressor falls into the category of fear of hostile military or terrorist activity, and they make a mistake, then there's a mistake of law there, not a mistake of fact. It seems to me your position depends on the argument that the doctors are applying DSM and determining whether the stressors are adequate to cause PTSD without addressing the question of whether the kind of stressor that's involved is within the regulation. Your argument has to be that that question is for the adjudicators and not for the doctors. Well, that is our position. I think the hypothetical you pose would only be true if the determination by the VA medical personnel here was based on whether or not the stressor related to the fear of hostile military or terrorist activity. The stressor is as described by the veteran. Whether it's characterized as or fits under the description of a fear of hostile military or terrorist activity doesn't change what the stressor is. And so the VA medical personnel here were addressing the stressors as identified by Mr. Hightower, and they determined that those stressors, regardless of how the VA would later characterize them, were not sufficient to support a PTSD diagnosis. So whether or not the VA medical personnel were asked the question of whether those stressors relate to a fear of hostile military or terrorist activity would not change the ultimate conclusion they reached, which is that those stressors as identified by Mr. Hightower… Even if they were asked that question. If they were asked that question, that would be a little troublesome, but it seems to me your argument is there's no evidence they were asked that question. They weren't asked that question, but Mr. Hightower believes that they need to be asked that question. I don't think so. Well, I believe Mr. Hightower's position is that the medical evaluations here cannot be the basis for the decision because the psychiatrists were not asked to determine whether or not the stressors relate to a fear of hostile military or terrorist activity. Mr. Hightower believes, in his brief, that that's a determination for the psychiatrists, and because the psychiatric opinions here predated the regulation, they weren't asked that question. The psychiatric opinions, they did show everyone agreed depression of some sort, subject to compensation. There were, if not a majority, we could debate that. Some psychiatrists attributed also said that this comes within the category of PTSD. The regulation permits the visibility of the veteran's testimony as well, and we know that people react to all sorts of things. It seems incomprehensible to say that someone who has been a medic repairing the damages of war for all of these years was immune and insulated from the, I'll say the horrors of war, such that there might not be a reaction, a psychological reaction. So this regulation is enacted to permit the further inducement of evidence from the viewpoint of the veteran. My problem is trying to now apply the policy change which underlies this change, appreciating that not everyone has documented every time a sniper may or may not have fired, and thinking the intent was a more permissive, more benevolent, more understanding of the realities of human nature that everyone reacts differently. So in some ways it's a surprise now to see the VA taking what looks like a much harder line, unless everybody, all seven, not just two out of the seven, say, well you weren't really shot at, so go away, and therefore you can't have been psychologically affected. It's hard to conform that to the policy that underlay the adoption of this regulation. He got compensation for depression, right? He did. Yeah. So we've taken care of whatever problem he really developed. Well, the symptoms are the same, and it was a question of his treating physician, he screened positive for PTSD based on these symptoms. Later he was diagnosed first with malingering by the C&P examination, but then with depression, and he was given service connection for the symptoms identified that also, Mr. Hightower argues, demonstrate his PTSD. Well, would he get a higher level of compensation if he had PTSD rather than depression? I don't believe he would because it's based on the same symptoms, and so the same symptoms would have the same disabling effect upon his condition. Well, what's the controversy about that? I'm afraid I can't answer that question. I believe it's… Hamster wheel. We keep it rolling. I mean, for that reason and the other reasons we identified, a remand here really would be fruitless for Mr. Hightower because it would not change the result because the VA medical personnel did not diagnose him with PTSD as the board found. To address your honors question, I don't believe the VA here is taking a hard line with respect to people who were intended to be covered by this lower evidentiary standard. The question is, is Mr. Hightower one of those individuals meant to be covered? As the board found on the basis of the medical evidence and on the basis of a review of his stressors and his service, he is not one of those individuals. So, it is not a circumstance where someone is coming in and saying, I was shot at. I have exactly what's described in this regulation, and the medical personnel mistreated me, and this regulation should help me out now, but you are not letting it help me out. There was a determination based on probative medical evidence that he does not have stressors sufficient to support a diagnosis of PTSD. So, regardless of the fact that there were treating physicians who said he screened positive, that is a determination for the board to determine where the probative value lies in those medical reports, and they determined that the examinations have found he did not have PTSD or more probative. For those reasons, we would ask the court to dismiss this case for lack of jurisdiction or any alternative affirmative decision of the Veterans Court. Thank you. Thank you. So, Mr. Furman, it doesn't make a difference whether he has service connection for depression or PTSD? Yes, it most certainly does, Your Honor. What's the difference? The difference is that there are substantially more symptoms that are measured to determine the degree of disability that he suffers from and therefore is entitled to compensation for. You're suggesting he'd have a higher disability rating if it were PTSD rather than depression? Yes, and because – Same symptoms. How can that be the case? It is not the same symptoms, Your Honor. With all due respect to my colleague, he is wrong. They are not the same symptoms. If you compare the symptoms in DSM for depression, they are significantly narrower. His symptoms are the same. They have been compensated under depression. His symptoms have not changed. Now, how is he going to get a different compensation? Your Honor, it is a question of what he suffers from. It is not a question of attorney fees more than a question of helping the veteran. I'm sorry, Your Honor. That just is simply incorrect. This has nothing to do with my compensation. This has to do with Mr. Hightower's compensation. Mr. Hightower is compensated under the VA rating schedule for the disability that he suffers from. The disability that he is treated for by the VA is post-traumatic stress disorder. Does the rating schedule provide a higher rating for PTSD than depression? The VA has a general rating formula, and it applies that same general rating formula to all disabilities. But under this court's decision in Claudio Vasquez, this court identified that you have to direct it to the specific symptoms of the specific disability that the veteran suffers from. And if you rate this veteran's disability only under the narrow symptomatology of depression, there will be a lower rating because the wider cluster of his symptoms are those that are produced by post-traumatic stress disorder. And that would generate, in fact, a higher rating. I understand what you're saying. What about the problem that there's no evidence that the doctors here were applying the regulation as opposed to the DSM? I don't think that that's a relevant consideration here, Your Honor. In this case, the VA, when it promulgated this regulation, said any veteran who has a case pending when this regulation is enacted is entitled to consideration. In this case, as you correctly observed, the board made the determination as to whether or not he did or did not have the requisite sphere necessary to be considered. A ground for decision which wasn't repeated by the Veterans Court. That's correct, Your Honor. But what was affirmed was that they were able to rely upon medical examinations that said that he didn't have post-traumatic stress disorder and found them more probative. They cannot possibly be more probative when his treating doctors said that when we interview and treat and medicate this client, we determine that this veteran suffers from post-traumatic stress disorder, a symptom of which is his depression. But it is merely one of the dynamics of the overall diagnosis that he carries from multiple VA psychiatrists and psychologists of post-traumatic stress disorder. And he was entitled to have a determination made by a VA psychologist or psychiatrist as to whether the stressors that he reported as constituting his fear... It seems to me, as far as the opinions by the doctors are concerned, it didn't make any difference to them whether the old regulation applied or the new regulation applied. They're just looking at the DSM and saying, does the guy have post-traumatic stress disorder? But, Your Honor, under this new regulation, in this Court's decision in Nova, when it reviewed this regulation, the VA came forward and explained that the only function of the VA psychiatrist and psychologist is not to make the diagnosis, but to determine whether or not the reported stressor supports the diagnosis that has been made. So what the VA examiners were doing under the prior regulation is different from what's required under the amended regulation. The amended regulation does not contemplate the type of examinations that were conducted in 2007 and 2010. It contemplates a different kind of examination when, as in this case, his treating psychiatrists have diagnosed him with post-traumatic stress disorder. They are simply to confirm that diagnosis and determine whether or not it is at least as likely as not that the reported stressors are related to the fear represented and they support the diagnosis of record. Thank you very much, Your Honor. Thank you. That concludes our hearing this morning.